# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHERL LYNN CARLSEN,**

        **Plaintiff,**

**-vs-**                                                                            **Case No.  6:13-cv-758-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's applications for disability benefits.  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income, alleging that she became unable to work on January 17, 2009 (R. 213-21). The agency denied Plaintiff's applications initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ").  The ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 9-26).  The Appeals Council declined to grant review (R. 1-5), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed her complaint in this action, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.  The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to "ruptured discs in lumbar, depression, high blood pressure" and resulting back and leg pain (R. 245, 49).

*Summary of Evidence Before the ALJ*

Plaintiff was 47 years old at the time of the ALJ's decision (R 9-26, 213, 220), with a high school education, and currently attending college online (R. 40-41). She has past relevant work experience as a photocopier operator, food service worker, packer, and food server (R. 67-69).

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff and her friend, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the severe impairments of spondylolisthesis of L5 on S1; degenerative disc disease and degenerative joint disease of the lumbar spine; and status/post osteomyelitis, discitis, and drainage of sacral abscess (20 CFR 404.1520(c) and 416.920(c)) (R. 14); and the record supports this uncontested finding. The ALJ determined that through the date of the decision, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 15). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work, noting that the claimant:

> cannot climb ladders, ropes or scaffolds, and can perform other postural movements only occasionally; should avoid concentrated exposure to temperature extremes, excessive vibration and hazards; can carry out simple instructions and perform simple, routine tasks involving little independent decision-making and few workplace changes; must be permitted a sit/stand option, able to change positions briefly between sitting and standing or walking every 30 minutes during the work day.

(R. 15).

The ALJ determined that Plaintiff could not return to her past relevant work (R. 19); however, with the assistance of the Vocational Expert, the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 20), and therefore, the ALJ found Plaintiff was not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that the ALJ improperly applied the pain standard in evaluating Plaintiff's allegations and failed to give proper weight to the opinion of Dr. Byerly, Plaintiff's treating physician.

The Court examines these objections in the context of the sequential evaluation applied by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Plaintiff's objections go to the formulation of the RFC (steps two and three), where the burden of persuasion rested with Plaintiff.

*The Pain Standard*

When a claimant attempts to establish disability through subjective symptoms, the Eleventh Circuit follows a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptom]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be

-4-

expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); *Mack v. Commissioner of Soc. Sec.,* 420 Fed.Appx. 881, 883 (11th Cir. 2011).

After considering a claimant's subjective complaints, the ALJ may reject them as not credible. Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

Applied here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 17). Plaintiff claims that this is error as the medical evidence "clearly establishes the Plaintiff satisfies the criteria for the 11th Circuit Pain Standard;" and the ALJ "clearly improperly discredited the Plaintiff's subjective complaints of pain." (Brief, p. 14). Upon review, the Court finds no error.

Plaintiff argues that she meets the applicable standard because the evidence demonstrates the existence of an underlying medical condition of such severity that it can be reasonably expected to give rise to the alleged pain. As support for this contention, she cites to the diagnosis itself and various websites which are not included in the administrative record, but which she represents purport to explain the condition. This is not persuasive. As noted above, the pain standard requires more than a mere diagnosis of an impairment that could reasonably be expected to produce alleged symptoms.

-5-

If the objective medical evidence does not confirm the severity of the alleged symptoms (as was found to be the case here) but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated. *See Mack, supra*, 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Here, the ALJ reviewed the medical records, opinions and testimony, and conducted just such an analysis, finding:

> In conclusion, I find that though the medical evidence establishes that the claimant has severe impairments, the record does not support the severity of her allegations. Though the objective medical evidence demonstrates that the claimant has been diagnosed with spondylolisthesis and degenerative disc disease/degenerative joint disease of the lumbar spine, the record additionally reflects that the claimant's treatment has largely consisted of pain medication and anti-inflammatories, with the exception of a steroid injection, which did not provide more than transitory relief. It is also true that the claimant's spinal condition was further complicated by the development of osteomyelitis and a sacral abscess, which was required to be drained, debrided, and treated with a course of antibiotics. However, recent medical records indicate that the claimant's pain symptoms have been controlled with adjusted pain medications, and that the severity of her subjective pain complaints is not as severe as she emphasized in the hearing. Furthermore, the claimant testified that she is currently spending 30 hours per week, or 6 to 7 hours per day, taking online classes and completing their associated assignments, demonstrating that the claimant is capable of a higher degree of functioning than she has alleged at the hearing and in the documentary evidence.
>
> Thereby, I find that the longitudinal evidence of record adequately supports the residual functional capacity determination, which accommodates the claimant's legitimate impairment related limitations since the alleged onset date. For all of the reasons stated and in view of the circumstances and evidence cited, I am convinced that the claimant, since January 17, 2009, had the inherent capacity to perform at least such limited work activity as has been defined within the parameters above.

(R. 18-19).

In her brief, Plaintiff claims the ALJ "played loose" with the facts. Plaintiff contends that 1) the ALJ misrepresented Plaintiff's pain levels; 2) improperly assessed the amount of hours Plaintiff goes to school; and 3) did not address the specific accommodation needed by Plaintiff to complete the online course work. The Court treats each objection, in turn.

In reviewing the medical evidence, the ALJ cited to treatment records and stated that Plaintiff's pain symptoms were "routinely noted to be within the range of 3-5 out of 10." (R. 17). Plaintiff cites to four occasions where Plaintiff expressed a pain level of 7 as evidence that the ALJ's finding was a "gross misrepresentation" (Brief, p. 16, citing R. 479, 486, 501 and 503). The medical records, however, reveal that Plaintiff's pain reports varied from a low of "0" to a high of "7." *See*, e.g., R. 477 (pain level "0"); R. 475 (level 3); R. 491, 493, 494, 497, 499, (level 4); R. 481 (level 5); R. 488 (level 5/6); R. 479, 486, 501 and 503 (level 7). As Plaintiff explained in her testimony: "I was taking, we tried several different pain medications. It took awhile before we found the type that I was able to function on, and was not experiencing the pain level that I had." (R. 50). While the Court agrees that the use of the word "routine" was ill-advised, the gist of the observation – that Plaintiff frequently reported levels of pain at or below level 5– is accurate. Indeed, at hearing, Plaintiff noted that with the medications, her pain is "still there but it's not as bad as it was" (R. 52) and rated her pain on average as level "five, five to six" (R. 63-64). This supports the ALJ's conclusion that Plaintiff's pain was, overall, not as severe as alleged.

Plaintiff next objects to the ALJ's reliance on Plaintiff's testimony regarding the amount of time she spends on her college classes. Plaintiff testified that, starting in 2009, she has taken online college classes and is presently taking two classes (R. 40-41). In response to the ALJ's questioning, Plaintiff testified that she spends about 30 hours a week attending class (online from her home) and completing assignments (R. 55-56); dedicating six to seven hours a day to her classwork (R. 62). As quoted above, the ALJ relied on this testimony to find that Plaintiff was capable of a higher degree of functioning than she alleged. Plaintiff contends that this is error in that Plaintiff filed a later Affidavit in which she declared that she had "inadvertently exaggerated" the amount of time she actually does school work (R. 523) and "the ALJ never addressed the discrepancy of how spending 6 to 7 hours a day to do school work during a 15.5 hour day is comparable to working an 8 hour day

-7-

which would not be able to afford the same level of breaks." This contention is of no moment. The Affidavit filed by Plaintiff after the issuance of the ALJ's decision is not new and material evidence as it provides no information, other than to vaguely recant Plaintiff's testimony without explanation. Further, the ALJ does not have an obligation to address the "discrepancy" noted, as the ALJ did not find that Plaintiff's classwork was equal to a full day's work. Rather, the ALJ cited Plaintiff's ability to perform schoolwork for 6-7 hours a day, 30 hours a week, as evidence that she was capable of more functioning than she alleged.

As for the last contention, Plaintiff argues that a remand is required as "the ALJ failed to provide any inquiry or even articulate [an] explanation regarding Plaintiff's statements about the Plaintiff's need to lay in bed to do her course work. In addition, the ALJ failed to address the Plaintiff's statement about having to repeat her courses due to her pain." (Brief, p. 18). Plaintiff, however, did not testify that she needs to lie in bed. Rather, she stated: "*I sit on my bed*. I spend most of my time on my bed with my legs up, so they're not hanging down." (R. 56 emphasis added). And while Plaintiff did testify that there were times when she had to repeat classes due to her pain (R. 56), this does not contradict her testimony regarding the amount of hours she spends on her classwork.

At best, these contentions stand for the proposition that there is record evidence which, if credited, could support a different conclusion. The standard, however, is not whether the evidence is unanimous or could support another result; the standard is whether *this* result is supported by the law and more than a scintilla of evidence. The Court finds that the ALJ's findings with respect to Plaintiff's allegations of pain are so supported, and no error is found.

*Weighing the Opinions of Treating Physicians*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's

-8-

physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Here, Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinions of Plaintiff's treating general physician, Dr. Byerly. As noted by the Commissioner and the ALJ, Dr. Byerly of the Health Department saw Plaintiff for regularly scheduled follow up and medication refill appointments throughout 2010 and early 2011 (R. 17, 457-72, 475-76). Dr. Byerly gave several opinions, which were described and weighed by the ALJ as follows:

> [T]he claimant's treating physician, K. Byarly [sic], M.D., submitted a medical source statement regarding the claimant's work-related physical activities. Dr. Byarly opined that the claimant could occasionally lift or carry up to ten pounds, sit for one hour in an eight-hour day, one hour at a time, and stand or walk less than one hour at a time (Exhibit 13F). Dr. Byarly also concluded that the claimant could only occasionally perform postural movements (Exhibit 13F). I find that Dr. Byarly's opinion is inconsistent with the overall record, particularly in relation to the claimant's own statements regarding her daily activities, such as those involving the 6-7 hours of class work that she performs per day. I have therefore given it limited weight.
> Dr. Byarly also submitted a statement on January 31, 2011, determining that the claimant was medically disabled (Exhibit 18F), and on May 5, 2011, opining that the claimant was totally and permanently disabled (Exhibit 19F). A claimant's residual functional capacity is not a medical issue, but is an administrative finding that is reserved to the Commissioner. Accordingly, medical opinions expressed in this form can never be given controlling weight or special significance, even if it is given by a treating physician (SSR 96-5p, 20 CFR 404.1527(e) and 416.927(e)). Thus, no weight is granted to these opinions.

(R. 18).

Plaintiff claims that the ALJ erred in failing to give controlling weight to the medical source statement in that this physician provided consistent longitudinal care and had reviewed the treatment records of the prior physician, an orthopedic surgeon, and thus there was no break in treatment. Plaintiff also argues that Dr. Byerly has related all of his diagnosis and assessments to the objective medical evidence provided by the prior physician. As noted, a treating physician's opinion may be discounted if it is unsupported and conclusory or inconsistent with other substantial record evidence. Here, the ALJ found the limitations noted to be inconsistent with the overall record, including Plaintiff's own statements. If this finding is supported by record evidence, the opinion is properly discounted.

-10-

The ALJ's opinion details the medical record, including the treatment notes of various providers (R. 17-18). While acknowledging the evidence supporting the existence of the impairments, the ALJ also noted, among other things, examination findings of negative straight leg tests, lack of sensory or motor defects, and treatment notes which indicate that Plaintiff was treated largely with pain medication and anti-inflammatories and her symptoms were mostly "controlled by her medication" (R. 17). These findings are supported by substantial evidence.[1] Moreover, as identified by the ALJ, the severely limited functionality described by Dr. Byerly conflicts with Plaintiff's testimony regarding her activities. Dr. Byerly's opinion also conflicts with the opinion of the state agency consultant, who concluded that Plaintiff could perform a range of sedentary work (R. 18).[2] The reasons identified are enough to support the ALJ's discounting of Dr. Byerly's opinion.

As for the conclusory opinions that Plaintiff was medically disabled, "[t]he task of determining a claimant's ability to work is within the province of the ALJ, not a doctor . . ." *Cooper v. Astrue,* 373 Fed.Appx. 961, 962 (11th Cir. 2010); *see also Green v. Social Sec. Admin.,* 223 Fed.Appx. 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ. 20 C.F.R. §§ 404.1513, 404.1527, 404.1545."); *Bazinet v. Astrue,* No. 2:11–cv–61–FtM–29SPC, 2012 WL 527535, *9 (M.D. Fla. Jan. 25, 2012) *adopted by* 2012 WL 527859 (M.D. Fla. 2012) ("The Social Security Regulations make clear that an opinion that a claimant is disabled or cannot work is not given special weight or

---

[1] For example, Dr. Byerly's notes seldom show any significant clinical findings and Dr. Byerly stated on several occasions that Plaintiff's chronic back pain was "stable" and controlled with medication (*see, e.g.* R. 459, 468, 471).

[2] The ALJ gave substantial weight to the opinion of this consultant (R. 18).

-11-

significance because this is an issue reserved to the Commissioner.")[3]  The ALJ owes no automatic deference to an opinion which merely provides that Plaintiff is disabled.

## Conclusion

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards.  As the Court finds that to be the case, it must affirm the decision.

For the reasons set forth above, the administrative decision is **AFFIRMED**.  The Clerk is directed to enter judgment accordingly, terminate all pending matters and close this case.

**DONE** and **ORDERED** in Orlando, Florida on July 14, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[3] "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." See SSR 96–5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner." "A medical source opinion that an individual is 'disabled' or 'unable to work,' has an impairment(s) that meets or is equivalent in severity to the requirements of a listing, has a particular RFC, or that concerns the application of vocational factors, is an opinion on an issue reserved to the Commissioner. Every such opinion must still be considered in adjudicating a disability claim; however, the adjudicator will not give any special significance to the opinion because of its source." SSR 96–8p, "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," footnote 8.